ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 0 2006

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EDWARD K. ACOSTA,
derivatively on behalf of
CHARYS HOLDING COMPANY,
INC.,

    Plaintiff,

v.

BILLY V. RAY, JR., DAVID
GERGACZ, DENNIS C. HAYES,
JOHN JORDAN, GISLE LARSEN,
RICHARD MANGIARELLI,
CATHERINE McKEE, H. ALEC
McLARTY, MICHAEL OYSTER,
NEIL L. UNDERWOOD, MARVIN
ROSEN, RAYMOND J. SMITH,
MORGAN RALPH DELUCIA,
TONY GENTILE, IFG PRIVATE
EQUITY, L.L.C., JANET RISHER,
RICHARD SCHMIDT, PAUL
FERANDELL, BRUCE CALDWELL,
JIMMY VILLALOBOS, ASH
MASCARENHAS, and FRANCIS
ZUBROWSKI,

    Defendants,

v.

CHARYS HOLDING COMPANY, INC.,

    Nominal Defendant.

CIVIL ACTION FILE NO.
**1:06-cv-0572** -CC 

**VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**

Edward K. Acosta ("Acosta"), through his undersigned attorneys, alleges his Verified Shareholder Derivative Complaint against the named Defendants, as follows:

## PRELIMINARY STATEMENT

1.

This derivative action arises from the breach of fiduciary duties owed to Charys Holding Company, Inc. ("Charys" or the "Company") and its shareholders, waste of corporate assets, and self-dealing by certain directors and officers of the Company.

2.

The Company's board has engaged in a pattern of neglect and has utterly failed to oversee both the operations and financial reporting of the Company, which has caused, and will continue to cause, material damage to Charys' financial position and reputation.

3.

The Company's board has failed to properly ensure that an adequate system of reporting the Company's activities was in place, causing the Company to be exposed to claims for violations of the federal and state securities laws by Plaintiff and other shareholders.

4.

Despite demand having been made upon them, and given the numerous conflicts of interest of certain directors, some of which have gone undisclosed, and given the Board's failure to institute necessary remedial actions at the Company over an extended period of time, it is clear that the directors will not take any meaningful action against their colleagues on the board or who serve the Company as officers, and will continue to allow the Company to suffer harm without recompense.

5.

As a result of the foregoing, and more specifically, based upon the allegations which follow, Plaintiff brings this action on behalf of Charys to cause the defendants to account for the damage caused to the Company, to recover such damages for its benefit, and to institute the necessary corrective measures to ensure that such problems do not occur again in the future.

## JURISDICTION AND VENUE

6.

This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the dispute is between citizens of different States. This action was not brought collusively to confer jurisdiction on a

court of the United States that it would not otherwise have. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, many of the acts alleged and complained of herein occurred in this District and the Company is headquartered in this District.

## **THE PARTIES**

7.

Plaintiff is a citizen of the State of Texas. Plaintiff has been a shareholder of Charys at all times since at least September 9, 2004. Plaintiff continues to be a shareholder of Charys as the time of the filing of this action.

8.

Charys is a corporation duly organized and existing under the laws of the State of Delaware. Charys maintains its corporate headquarters at 1117 Perimeter Center West, Suite N415, Atlanta, Fulton County, Georgia. Charys is engaged in the business of acquiring companies providing direct services and/or outsourced services to medium and large enterprise businesses. Chayrs is the holding company for certain subsidiaries, including Personnel Resources of Georgia, Inc., CCI-Telecom, Inc. Method IQ, Inc., Viasys Services, Inc., and Viasys Network Services, Inc.

9.

Billy V. Ray, Jr. ("Ray") is an individual who, at all times relevant to the subject matter of this action Ray has been Chairman of the Company's board and its Chief Executive Officer.

10.

David Gergacz ("Gergacz") is a member of the Company's Board of Directors.

11.

Dennis C. Hayes ("Hayes") is a member of the Company's Board of Directors.

12.

John Jordan ("Jordan") is a member of the Company's Board of Directors.

13.

Gisle Larsen ("Larsen") is a member of the Company's Board of Directors.

14.

Richard Mangiarelli ("Mangiarelli") is a member of the Company's Board of Directors.

15.

Catherine McKee ("McKee") is a member of the Company's Board of Directors.

16.

H. Alec McLarty ("McLarty") is a member of the Company's Board of Directors.

17.

Michael Oyster ("Oyster") is a member of the Company's Board of Directors.

18.

Neil L. Underwood ("Underwood") is a member of the Company's Board of Directors.

19.

Marvin Rosen ("Rosen") is an advisor to the Company's Board of Directors.

20.

Raymond J. Smith ("Smith") is the Company's Chief Financial Officer.

21.

Morgan Ralph Delucia ("Delucia") is the Company's Vice President of Investor Relations.

22.

The defendants, by virtue of their status as directors, officers or executives of Charys have at all relevant times had the power and influence and did in fact

- 6 -

control and influence, cause and/or permit Charys to engage in the unlawful acts and conduct complained of herein.

23.

Each of the defendants is liable as a direct participant in, and/or as an aider and abetter of, the wrongs complained of herein.

24.

By reason of their positions and because of their ability to control the business and corporate affairs of Charys at all relevant time, the Defendants owe and have owed Charys and its shareholders fiduciary obligations of fidelity, trust, loyalty and due care, and were and are required to use their utmost ability to control and manage Charys in a fair, just and equitable manner; to act in furtherance of the best interests of Charys and its shareholders so as to benefit all shareholders and not in furtherance of their personal interest or to benefit themselves; and to act with complete candor toward the public shareholders. Additionally, each director of Charys owes and has owed to Charys and its shareholders the fiduciary duties to exercise due care and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of good faith and fair dealing.

25.

The defendants serving on the Company's Audit Committee were charged with specific oversight responsibilities. Members of the Audit Committee are responsible for monitoring the integrity of the Company's financial reporting processes and providing systems of internal controls regarding finance, accounting and legal compliance. The Audit Committee has the power and authority to conduct investigations appropriate to fulfilling its responsibilities and to retain special legal, accounting, and other experts or consultants necessary to the performance of its duties. The Audit Committee was charged with reviewing with the Company's legal counsel, not less than annually, any legal matters that could have a significant impact on the Company's financial statements, compliance with applicable laws and regulations. And, the Audit Committee was required to review a summary of officers' and directors' related party transactions and potential conflicts of interest. Upon information and belief, the members of the Audit Committee at all times relevant to the subject matter of this Complaint include Mangiarelli (Chairman), Gergacz, Oyster and McKee.

26.

The defendants serving on the Company's Finance Committee are charged with overseeing all areas of corporate finance for the Company and its subsidiaries, including capital structure, equity and debt financings, capital expenditures, cash

management and banking activities. The Finance Committee is responsible for reviewing with Charys' management any and all strategies, plans, policies and actions related to the Company's finances, and has the power and authority to approve those on behalf of the Board. The members of the Finance Committee of the Company at the times relevant to this Complaint include Underwood (Chairman), Oyster, Jordan and Hayes.

27.

The defendants serving on the Company's Executive Committee exercise all of the powers and authority of the Board in the management of the Company's business and affairs between regular and special meetings of the Board, except as otherwise limited by Delaware law. Upon information and belief, the members of the Executive Committee at times relevant to this action include Ray (Chairman), McLarty, Mangiarelli, Gergazc and McKee.

28.

Non-employee members of the Board of Charys receive compensation for their service on the Company's board. Each non-employee director receives $2,000.00 for each meeting attended in person or $1,000.00 for each meeting attended telephonically. Non-employee directors receive an hourly fee of $250.00 per hour for time spent on projects for the Company, and certain "deal fees." Deal fees may include an hourly fee for time spent on negotiation and/or due diligence,

as well as fees ranging from two percent (2%) to five percent (5%) of the purchase price of an acquired business. Additionally, non-employee directors receive stock grants and options to purchase Charys shares.

29.

All members of the Board, whether non-employee members or otherwise, receive 20,000 shares of Charys common stock and an option to purchase 100,000 shares as remuneration for their initial term. Thereafter, for each successive year of membership on the Board, such member receives 20,000 shares of Charys common stock and an option to purchase 100,000 shares. When a director resigns or is not re-elected to the Board, that director receives an additional 50,000 shares of Charys common stock.

30.

As a result of their positions of control and authority as executive officers and/or directors of Charys, the Defendants were able to, and did, directly and indirectly control the matters and transactions complained of herein. The Defendants have, and have had, the duty to exercise reasonable control and supervision over the officers, employees, agents, business and operations of Charys, as well as to be and remain informed as to how the Company was operating, and upon receiving notice or information of an imprudent, questionable or unsound decision, condition, or practice, to make reasonable inquiry and, if

necessary, make all reasonable remedial, and to conduct the affairs of the Company to provide the highest quality services and maximize the profitability of the Company for the shareholders.

31.

Tony Gentile ("Gentile") is an individual who has received benefits from the Company for which the Company received no benefit, as well as having participated in certain transactions involving Charys for which compensation was improper and/or illegal.

32.

IFG Private Equity, L.L.C. ("IFG") is a Georgia limited liability company which has received benefits from the Company which were improper and/or illegal.

33.

Janet Risher ("Risher") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

34.

Richard Schmidt ("Schmidt") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

35.

Paul Ferandell ("Ferandell") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

36.

Bruce Caldwell ("Caldwell") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

37.

Jimmy Villalobos ("Villalobos") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

38.

Ash Mascarenhas ("Mascarenhas") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

39.

Francis Zubrowski ("Zubrowski") is an individual who has received benefits from the Company which were improper and/or illegal and without providing any benefit to the Company.

## SUBSTANTIVE ALLEGATIONS

40.

On or about March 8, 2004, Charys acquired the right to purchase three parcels of real property located in Stanley County, North Carolina. Amongst those parcels was one known as the "Barringer Mine Property." Charys acquired the right to purchase the Barringer Mine Property for $2,400,000.00.

41.

On or about May 18, 2004, Charys transferred its right to purchase the Stanley County, North Carolina parcels, including the Barringer Mine Property, to Flagship Holdings, Inc. ("Flagship").

42.

Upon information and belief, at all times relevant to the subject matter of this Complaint, Flagship was owned 26% by Ray and 25% by Neil L. Underwood -- either for himself or as nominee for H. Alec McLarty. Additionally, when Charys transferred its right to purchase the Barringer Mine Property to Flagship Ray was Chief Executive Officer of Flagship, and had been its Chief Executive Officer since at least September 2003.

43.

On or about May 26, 2004, Flagship completed the purchase of the Barringer Mine Property paying at least $1,200,000.00 of the $2,400,000.00

purchase price by executing a promissory note in favor of the seller. On the next day, Flagship sold the Barringer Mine Property to Realm National Insurance Company, Inc. ("Realm"), a company Flagship was attempting to acquire. At the time of the sale of the Barringer Mine Property to Realm, Ray and two (2) other holders of interests in Flagship were vice presidents and members of the board of Realm, and Ray had held those positions since January 2004. Realm paid $3,400,000.00 to Flagship for the Barringer Mine Property

44.

In addition to having transferred the benefits derived from the sale of the Barringer Mine Property to Flagship, Charys entered into a 10-year lease in favor of Realm at a cost of $150,000.00 per year to Charys. That lease provided Charys the right to mine the Barringer Mine Property during the term of the lease.

45.

Upon information and belief, Charys committed to the lease for the Barringer Mine Property prior to obtaining an independent expert opinion of the value it could expect to derive from the mining of that property. No such mining activity has been undertaken by Charys to date. And, when the opportunity to mine the Barringer Mine Property was reviewed by Brax Cutchins, an officer of Charys' subsidiary, Personnel Resources of Georgia, Inc. ("PRG") with knowledge in this

area, it was determined that the mining of the Barringer Mine Property would not be worthwhile.

46.

Following the Barringer Mine Property transaction described above, another of the three parcels of real property in Stanley County, North Carolina was sold by Flagship.

47.

On or about January 12, 2005, Gentile, a representative of IFG, was issued 250,000 shares of Charys common stock designated as "S-8 shares." These shares were issued to Gentile in exchange for certain unspecified "consulting" services. The value of the shares distributed to Gentile was approximately $430,000.00 when he received them.

48.

Gentile and IFG have performed a number of services for Charys and certain of the members of the Charys board of directors, including, (i) arranging the purchase of Ray's interest in Charys; (ii) promoting sales of Charys shares to members of Charys' board of directors; (iii) arranging a $140,000.00 loan to Charys; and (iv) assisting Charys in an acquisition attempt that was unsuccessful. Pursuant to the rules of the United States Securities and Exchange Commission

(the "SEC"), activities of the type performed by Gentile and/or IFG do not qualify for remuneration in securities registered on Form S-8.

49.

The shares issued to Gentile by Charys as compensation for his services to Ray in the acquisition of his interest in Charys diluted the value of shares of Charys common stock held by others for the personal benefit of Ray.

50.

In addition to having provided Gentile and/or IFG with 250,000 shares of common stock issued in a form violating SEC regulations, Charys had previously permitted Gentile and/or IFG to earn compensation for acts which violated the law. Specifically, Gentile, in his capacity as an employee of IFG, provided Charys with a loan in the amount of $140,000.00 during December 2004 or January 2005 (the "IFG Loan"). The IFG Loan was made from funds provided by an investor for delivery to Charys. Upon information and belief, the amount of money provided by the investor to Gentile and/or IFG was $200,000.00. Despite the foregoing, Gentile and IFG only made available to Charys $140,000.00 of those funds, apparently retaining the other $60,000.00 as fees for himself and/or IFG. At some point between April 30, 2005 and July 31, 2005 Charys repaid the IFG Loan by delivering $205,000.00 to Gentile and/or IFG.

51.

Through the transaction described in paragraph 39, above, Charys paid Gentile and/or IFG a return of 65.41%, equating to an annual effective rate of 92.35% for the IFG Loan. These rates are far in excess of normal costs for money and exceed the legal lending limit within the State of Georgia.

52.

On or about June 25, 2004 Charys issued shares to Risher, Schmidt, Ferandell, Jordan, Caldwell, Villalobos, Mascarenhas and Zubrowski (collectively, "Consultants") in exchange for their providing general business consulting to Charys. Because the Consultants were to provide the consulting services to Charys, one third (1/3) of the Consultants' shares were issued with benefits including registration on Form S-8. In fact, the Consultants never provided any consulting services to Charys in exchange for their shares which, in truth, were issued in connection with Ray having acquired the interests of Mangiarelli and/or Risher and Richard Schmidt in Charys, despite SEC regulations prohibiting the same.

53.

PRG was acquired by Charys on or about July 1, 2004. The purchase price to be paid by Charys was to be finalized by reference to a formula after closing, but in no event was it to be less than $250,000.00. Charys paid the pre-adjustment purchase price for PRG by execution of a promissory note.

54.

Prior to its acquisition PRG was controlled by Ray who was its Chief Executive Officer. PRG had been notified by the Internal Revenue Service that it is the subject of penalty assessments of approximately $446,000.00 relating to PRG payroll taxes relating to periods prior to the acquisition by Charys. Charys is now accruing for the possible payment of these unpaid assessments to the ultimate benefit of Ray and the detriment of each and every other holder of an interest in Charys. Despite Charys' having a right to offset the tax penalties against the minimum purchase price for PRG, however, and without receiving any other benefit, Charys paid $39,500.00 toward the purchase price of PRG a full year before any payment became due, and another $77,000.00 at least nine (9) months before that payment was due. And, these payments were made without regard to the fact that the payroll tax liability Charys may incur in connection with PRG appears to exceed the minimum adjusted purchase price Charys agreed to pay for PRG.

## DERIVATIVE ALLEGATIONS

55.

Acosta brings this complaint derivatively in the right and for the benefit of Charys to redress injuries suffered and to be suffered by Charys as a direct result of

- 18 -

the violations of fiduciary and other common law duties by Defendants to Charys
and its shareholders.

56.

This action is not a collusive action to confer jurisdiction on this Court that it
would not otherwise have.

57.

Acosta will adequately and fairly represent the interests of Charys and its
shareholders in enforcing and prosecuting their rights.

58.

Acosta has made demand on the Board of Directors of Charys to institute
this action more than ninety (90) days prior to his filing this Complaint, but the
Board of Directors has not complied with that demand. A true and correct copy of
Acosta's demand is attached hereto as Exhibit "A." Letters identical to Exhibit "A"
were sent to each member of the Board.

59.

In an apparent effort to position themselves for this litigation the Defendants
have notified Acosta that Charys has appointed a committee of directors to
investigate and analyze his demands. The Board of Directors took this action on or
about February 21, 2006, one hundred four (104) days after Acosta made the
aforementioned demand upon them. A true and correct copy of correspondence

from the Company reporting the taking of this action is attached hereto as Exhibit "B."

## COUNT I

### (Breach of Fiduciary Duties)

60.

Acosta incorporates by reference and realleges each and every allegation set forth in paragraphs 1 through 59, above, as though fully set forth herein.

61.

Each defendant owes Charys and its shareholders the highest duties of loyalty, honesty and care in conducting their affairs relating to the Company.

62.

At a minimum, each defendant should have exercised reasonable and prudent supervision over management, policies, practices, controls and financial affairs of Charys to discharge these duties. To discharge these duties the Defendants were required to, inter alia:

(i)     exercise reasonable control and supervision over the officers, employees, agents, business and operations of Charys;

(ii)    be and remain informed as to how Charys was operating and, upon receiving notice or information of an imprudent, questionable, or

unlawful decision, transaction, condition or practice, make reasonable

inquiry and, if necessary, make all reasonable remedial efforts; and

(iii)    conduct the affairs of Chays in a lawful manner and in compliance

with government rules and regulations.

### 63.

The Defendants, and each of them, knowingly, intentionally, recklessly,

and/or negligently breached their fiduciary duties and, thereby, caused the

Company to commit illegal acts, waste its assets, and impair its reputation and

credibility for no legitimate business purpose, as a result of which Charys has been

and continues to be substantially damaged.

### 64.

Accordingly, Acosta seeks, on behalf of Charys, monetary damages,

injunctive remedies, and other forms of equitable relief.

## COUNT II

### (Indemnification)

### 65.

Acosta incorporates by reference and realleges each and every allegation set

forth in paragraphs 1 through 64, above, as though fully set forth herein.

66.

As set forth hereinabove, Charys has suffered significant and substantial injury as a direct result of the defendants' knowing, intentional, or reckless breaches of their fiduciary duty to the Company and its shareholders. Acosta, on behalf of the Company, seeks relief from the Defendants, and each of them, on the theory of indemnification for all damages that occurred as a result of the defendants' violations of their fiduciary duties.

## COUNT III

## (Self-Dealing and Conflicting Interests)

67.

Acosta incorporates by reference and realleges each and every allegation set forth in paragraphs 1 through 66, above, as though fully set forth herein.

68.

The actions taken with regard to the transfer of the Barringer Mine Property and at least one (1) other parcel of real property to Flagship and Realm constituted self-dealing and the transfer of the Company's assets for the exclusive benefit of Ray and McLarty. As a result of this action the Company has suffered damages in an amount not less than $1,000,000.00. Accordingly, Acosta seeks relief from Ray and McLarty, on behalf of Charys and its shareholders, for such damages, the actual amount of which will be more particularly proven upon trial of this matter.

69.

The acquisition of PRG by Charys, causing Charys to become responsible for taxes, penalties and interests owed by PRG, has caused Charys to suffer damages in an amount which is believed to be not less than $446,000.00. Accordingly, Acosta seeks relief from Ray, on behalf of Charys and its shareholders, for such damages, the actual amount of which will be more particularly proven upon trial of this matter.

70.

As a result of the manner in which the IFG Loan was transacted by Charys, Gentile and/or IFG were permitted to earn amounts which are substantially higher than any reasonable, comparable charge would have been and which were usurious, thereby causing Charys to suffer damages in an amount which is not less than $100,000.00. Accordingly, Acosta seeks relief from Ray, Gentile and IFG, on behalf of Charys and its shareholders, for such damages, the actual amount of which will be more particularly proven upon trial of this matter.

71.

As a result of Charys having issued shares to the Consultants for the sole benefit of Ray, Charys has suffered damages in an amount which is not less than $1,000,000.00. Accordingly, Acosta seeks relief from the each of the Consultants

and Ray, on behalf of Charys and its shareholders, for such damages, the actual amount of which will be more particularly proven upon trial of this matter.

Wherefore, having fully set forth his derivative complaints above, Acosta requests the Court grant him the following relief for the benefit of Charys and its shareholders:

(i)     Declaring that the Defendants who are officers, directors and/or advisors to the directors of the Company, and each of them, have breached their fiduciary duties as alleged herein;

(ii)    Entering judgment in favor of Acosta, on behalf of Charys and its shareholders, as to each of the defendants who are officers, directors and/or advisors to the directors of the Company in an amount equal to the damages suffered by Charys by reason of the acts and omission complained of herein;

(iii)   Entering judgment in favor of Acosta, on behalf of Charys and its shareholders, as to Ray and McLarty in an amount equal to the damages suffered by Charys by reason of the acts and omission complained of herein relating to the transfer of the Barringer Mine Property and the related real property transactions;

(iv)    Entering judgment in favor of Acosta, on behalf of Charys and its shareholders, as to each Ray, Gentile and IFG in an amount equal to

the damages suffered by Charys by reason of the payments made by Charys with regard to the IFG Loan;

(v)     Entering judgment in favor of Acosta, on behalf of Charys and its shareholders, as to Ray, Gentile and IFG in an amount equal to the damages suffered by Charys by reason of the payments made to Gentile and/or IFG for services provided solely to Ray;

(vi)    Entering judgment in favor of Acosta, on behalf of Charys and its shareholders, as to the Consultants and Ray in an amount equal to the damages suffered by Charys by reason of the shares of Charys common stock paid to them for the sole benefit of Ray;

(vii)   Ordering Defendants who are officers and/or Directors of the Company to remit to Charys all compensation paid them, whether in cash, stock, options or otherwise, for periods when they breached their fiduciary duties to the Company;

(viii)  Ordering the Defendants and those under their supervision and control to refrain from further violations of the type and nature alleged herein and to implement corrective measures that will rectify all such wrongs as have been committed and prevent their reoccurrence;

(ix)    Award Acosta, on behalf of Charys and its shareholders, such pre-judgment and post-judgment interest as allowed by law;

- 25 -

(x)     Award Acosta his attorneys' fees, costs and expenses incurred in
connection with the prosecution of this action;

(xi)    Granting such other and further relief as this Court may deem just and
proper; and

(xii)   That this matter be tried before a jury.

Respectfully submitted this ___ day of March, 2006.

Steven J. Strelzik
Attorney for Plaintiff
State Bar of Georgia No. 687025

Law Offices of Steven J. Strelzik, P.C.
Suite 1100
3355 Lenox Road, N.E.
Atlanta, Georgia  30326
(404) 237-5121

## **VERIFICATION**

The undersigned, Edward K. Acosta, having appeared before an officer duly authorized to administer oaths, upon being sworn does state and depose that he has read the foregoing Verified Shareholder Derivative Complaint in which he is the named Plaintiff and that the facts and allegations contained therein are true and correct to the best of his knowledge and belief.

This 9th day of March, 2006.

EDWARD K. ACOSTA

Notary Public